Case number 21-5179, United States of America v. Honeywell International, Inc. Mr. Primus for the appellant, Mr. Agenda for the appellant. Good morning. May it please the court. When Congress enacted the False Claims Act in 1863, the prevailing common law at the time recognized joint and several liability for joint tour visas with no right of contribution. And that has been the unbroken rule courts have applied ever since. As a result, when multiple parties are jointly liable for the same false claim, any one of them can be held responsible for 100% of the damages, while others may be responsible for nothing at all. And that is the very nature of a joint and several regime with no right of contribution. It is focused on full compensation for the plaintiff and not on an equitable apportionment of fault among the defendant. The question in this case is, what is the appropriate measure of the offset for damages already recovered by the government from other defendants for the same false claims? The answer under the common law and common sense is a pro tonto setoff for all money received by the government. In response... You keep talking about the common law and the any person, it says any person who defrauds the government is liable for three times the amount the government sustains because of the act of that person. And under your theory, quote, any person who defrauds the United States government, namely Honeywell, will not have to pay a cent, right? Well, not exactly on the last point, Your Honor, because you'd still be liable for... I'm talking about treble damages. Sure, on the treble damages part. But doesn't the statute require any person who defrauds the United States to pay treble damages? No, Your Honor, not in the multiple tortfeasor context. Wait, wait, just stick with the statute. Suppose we weren't talking about multiple tortfeasors or common law or anything. Just look at the statute. You're suggesting a rule, the pro tonto rule, that would result in a person who defrauds the government, namely Honeywell, in not being liable for treble damages. That seems inconsistent with the statute. No, Your Honor, there were only one defendant, only one tortfeasor, that party would pay treble damages. I'm talking about this case. Correct. And in this case, the way Your Honor is positing the statute be read would indicate... No, I'm not positing it be read anywhere. I was reading you the statute. I understand. And my response is that if it is read that way and every person who is a party to jointly committed tort is liable for three times the damages, then in theory you could have 15, 21, 30 times damages. And no court has ever applied it that way. In fact, in U.S. Well, what's the matter with that? I mean, even I think it was McDermott that said, it wasn't a statutory case, but McDermott says, quote, making tortfeasors pay for the damages they cause can be more important than preventing overcompensation. So the point is that as far as Congress is concerned, and the taxpayers are concerned, it's definitely more consistent with the purpose of the statute than to have overpayments and to have, quote, any person who defrauds the government to go off and not pay treble damage. Your Honor, if I may respond to that. Of course. McDermott, in our view, is completely an opposite. And McDermott itself says that. I wasn't suggesting that McDermott was binding. I was just suggesting that here's the Supreme Court telling us that overpayment is less important than requiring that tortfeasors pay. Well, in fact, we've said that too. We've said, Judge Leventhal said the same thing years ago in that, what is it, Rose? He said exactly the same thing. It wasn't a false claims act case. Your Honor, the difference with McDermott is that McDermott was a case, first, where the Supreme Court recognized it was admiralty in an area of judge-made law. And second, there was a proportionate fault. There is no regime of which we are aware, and the government has cited none, where there is joint and several liability and no right of contribution, yet a proportionate share approach to an offset. Just out of curiosity, where does the joint and several come from? Have courts said that there's joint and several liability under the False Claims Act? Yes, the courts have consistently said that, and the Department of Justice has. It's a question, I'm not challenging you. What's your best case for that? Your Honor, we've cited numerous cases in our brief where the courts have consistently held it's joint and several. How about no right of contribution? Where does that come from? No right of contribution has, again, been consistently held by the courts. Was it actually contested or just stated? No, in most cases it's been stated and applied, but not reached as a holding. But we do believe that it is strong evidence of what the common law was at the time the statute was enacted. And we know that from, for example, the Lovejoy versus Murray case in 1865, which was just two years after the False Claims Act was enacted. And it recognized multiple common law decisions that said where there's full satisfaction of a judgment that the other defendants to a joint tort are not liable for it. And it recognized cases that were from multiple states that were decided before the False Claims Act was enacted. And as the Supreme Court has said multiple times, when Congress passes a statute like the False Claims Act, it does so against a backdrop of common law that is presumed to incorporate. But that's unless the statute itself provides otherwise, correct? Well, if the statute itself is clear, then you would look at the language of the statute, certainly. But where the statute does not directly address the issue at hand here, the method for calculating offsets, the Supreme Court has said you look to the common law at the time that the statute has been enacted. And is your primary argument about the theory I Is that your main argument as to why a literal reading of the statute doesn't work? Our main argument is that a literal reading of the statute does not answer the question at hand and does direct the court to incorporate the background common law. Where does it say that? Well, we believe the focus is on damages and the treble damages and how to interpret that term. And the statute does not address a joint tort fees or situation. If it says any person, that's not addressed to the joint tort fees or situation. But we know that the joint tort fees are commonly accused of committing the same false claim. And as I said, the Justice Department in such cases, when it goes to trial, asked for an instruction of the jury indicating that only one judgment and one amount of damages can be obtained. And it does not ask for three times damages against each defendant. The government's not even seeking that relief. And we're not aware of any court that has ever acknowledged that. And certainly in U.S. versus Bornstein, the United States Supreme Court, while it wasn't presented, certainly had no issue with and directed the lower courts to deduct amounts already paid from a False Claims Act judgment. How do we know that the apportionment rule and reliance transfer should not apply to false claims? Well, for two reasons. First, in the admiralty context, the Supreme Court has been careful to that it is involved in judicial policy and judicial lawmaking. And then in the Edmonds case, the Supreme Court specifically distinguished the common law approach when you're dealing with a statute. And the court said specifically in Edmonds that once Congress has spoken, we are not as free as we are in the normal admiralty judicial lawmaking context to create federal common law. And the Supreme Court more recently has been very clear that courts should use all the tools, all the interpretive tools in the toolbox before resorting to federal common law. And that has been consistent across many cases, including most recently the Comcast decision. You know, I'm glad you mentioned Bornstein because Bornstein is a False Claims Act case, right? Yes. Yeah. Because your response to my reading McDermott is that that wasn't a False Claims Act case. But Bornstein, the case you rely on, as you point out, the question of whether the pro tanto approach was required or not wasn't before the court, but it picked the approach that the government suggested because, and I'm quoting here, the government's approach because it said, because it, quote, fixes the liability of the defrauder without reference to the adventitious actions of other person. And it actually said it twice. It said the prime contractors were to a dissent and not determine the liability of subcontractors. So it's saying the same thing McDermott said in the context of the False Claims Act, namely that the liability of the person who defrauded the government shouldn't be, for treble damages, or in that case, double damages, shouldn't be affected by the actions of another. That's what it said. Yes. And the context in which it said that was in addressing whether damages should be doubled prior to or after the offset. And then it went ahead and directed the lower court to deduct 100% of the other defendant's payment in that case, which is consistent with what the Department of Justice usually seeks in these cases and what we're asking for here. Are you familiar with any other case in which application of the Pro Tanto rule would mean a zero liability party? Well, in the 1865 case of Lovejoy versus Murray, that's what the Supreme Court said the rule was. And that's the last one? No, but I don't know that this situation arises that frequently, where the Justice Department is able to get all of its damages back from the other co-defendants before a case settles. And I would just indicate in terms of likelihood of settlement, the threat to each defendant of having 100% exposure on liability here apparently caused the other defendants to settle early. And indeed, their settlements amount were very modest, except for one. There were two in the tens of millions. One was $11 million, I think? There's one $30 million, approximately, and one of approximately $70 million. They were substantial for Arma Holdings and for Toyobo. And I would just note, if the government had decided not to settle with those parties, and the three companies that made these vests together went to trial, the government would seek one amount of damage. And then they would be troubled, and it would decide which of the three defendants would pay that. They would never get more than three times. And that's what the government seeks when it goes to court and offers jury instructions to the judges. That's all we're asking for in case. Mr. Primus, so assume I agree with you that the FCA is silent on this question, but also that I'm not convinced that the common law in 1863 was settled. So if we were to set a common law rule now, I mean, the government suggests we should proceed on a case-by-case basis rather than set a particular liability rule. And I'm wondering if the FCA doesn't set the rule and the common law doesn't set the rule, why should we set a rule as opposed to proceed on a case-by-case basis? Well, Judge Rao, I would say that first, with regard to the rule where there's full satisfaction, that was settled. There was no debate in 1865 in the Supreme Court. And that's the exact situation we have here. So I don't think there's a reason to have to create a new common law rule. And regardless, the proportionate share rule wasn't even a known thing until the 1960s. And so that can't possibly be. In terms of going with an equitable case-by-case approach, we were actually surprised to see the government argue for that. I think I know why they are doing that, because they want to be able to choose in every case how much damage they can get. That is a completely unworkable rule. And the authority the government cites for that is CERCLA, where Congress actually did speak, and I think actually proves our case, where Congress wants to allow courts equitable discretion to carve up damages among defendants. It knows how to do that, and it speaks. In this case, where it is silent on it, and I don't want to say they're silent. They just didn't directly address this issue. But they did create exposure for treble damages for joint tort feasors. And there's a settled body of law, we believe, that answers how you deal with it in that situation. And Congress has never spoken to say that that should not be the rule. But if there isn't a bunch of cases like this, if this is one off since 1865, let's say, it seems that the position the government's taken is just chasing this case. It might well be. What else is at stake, really, nothing but this case? Well, I think a question for the government, Your Honor, is why they're taking this equitable case-by-case approach, and why they want that to be the rule, which I think I'm not aware of any other area of the law where that's the case, and certainly not where Congress has a statute in place. And yes, I think that they are trying, in this case, to get more than three times their messages. Let's just play it out for a second. If the government is correct about this, and it's going to be case-by-case, then what does that do in terms of the effect on settlement? If the government is correct? Yeah. I think it will make for a very chaotic False Claims Act situation because, for instance, if everyone knew that the government's new proposed rule was the rule 13 years ago when this case was brought, I suspect we would have had a lot different litigation. The parties probably would have sought to have their cases consolidated so that proportionate and comparative fault could have been determined in one case. But that's not what happened. And so these cases proceeded on separate tracks. There was no cross-discovery between the Toyobo case and the Honeywell case. Right. But looking to the future, where new cases come along, and the government's going to, pardon me, the court's going to decide which rule is to be applied, how does that affect settlement? If the court adopts Honeywell's proposed rule, I don't think it will change things at all because... If it adopts the government's? There will be intense cross-litigation among co-defendants trying to blame one another for the same fault, and it will create many trials within trials. And we will have the situation that we would have in this case on remand, where the whole trial will now become Honeywell versus Toyobo versus Armor Holdings, rather than the question presented, which is whether Honeywell submitted a false claim, which incidentally, I'll just say Honeywell did not. But I understand that's not at issue here. But that is exactly what will happen. And this case would have been discovered and litigated very differently if we had known this was going to be the case. Mr. Primus, if we're deciding between the protonto and the proportionate share approach, how much weight should we put on the purpose of the False Claims Act? So the government argues that it's in part punitive, and you argue that one of its main purposes is compensatory. I Your Honor, I think this Court said in Cimino, and as recognized elsewhere, as has the Supreme Court in recent statutory construction cases, that trying to define the purpose of a statute is very dangerous business. And as Judge Patsis said in the Allen case, it opens the door to, and as this Court said in Cimino, it opens the door to judicial policymaking. And so we don't resort to the common law at the time the statute was passed, just because the Supreme Court said to do that. There's a serious separation of powers reason for that, which is to guide judicial decision-making and interpretation of statutes. And so we would submit that the purpose case law on the False Claims Act is less than clear. The Supreme Court has said both that it is punitive and that's compensatory. In the antitrust cases, which also have trouble damages, the same thing occurs. And there's no judicial line between where it becomes compensatory and punitive in any given case. So we think it's very dangerous, and we think the common law answers this question. So I have just a question about the record. Do I understand the government, I think I saw this in a district court decision, the government is seeking what, $17 million from Honeywell? The government is seeking $11.5 million on the False Claims Act count, and then it's $34.5 million. Well, what about from Honeywell specifically? That is the amount, oh, just to be clear, the government is seeking 100% of the liability from Honeywell, which means if they prevent this... No, I'm talking about in the district court. Yes, that's what it is. Where did I get the $17 million figure, isn't it? What did the district court mean by that? I don't know. There are other counts that might be talking about, but on the False Claims Act, it's $34.5 million plus penalties. Okay. Thank you, Your Honor. Any other questions? No. Okay, thank you. We'll hear from the... Did you have a question? No, I didn't. Thank you. We'll hear from the government. Thank you, Your Honor, and may it please the court. Sean Janda for the United States. I'd like to start, if I can, exactly where the court started this morning, which is with the text of the statute. I think, as Judge Taylor, you suggested, the statute makes any violator liable for three times its damages. So the initial, I think, implicit premise of Honeywell's argument that it's entitled to a set-off, it doesn't come from the statute. But what you just said isn't the position the government took in its brief. So, Your Honor, I think... You say in your brief the statute doesn't answer this question, which sort of surprised me. I think that the starting point from the statute is that any person is liable for three times the damages. Is liable for three times the damages. That being said, the government recognizes that there is an equitable principle that entitles joint tort feeders to set-offs when other joint tort feeders settle. And the government hasn't contested that application of that equitable principle at a general level is appropriate in this case. But I think the important point here is that Honeywell's argument that it's entitled to a set-off, it isn't a statutory argument. The statute doesn't address that question. It's an argument that itself is grounded in equity. And so I'm not sure how Honeywell can come in and try and sort of start with that equitable premise and then run away from equity when it comes to figuring out, you know, not whether they're entitled to a set-off, but rather whether how you calculate the set-off. So, is it your position that the Pro Tonto rule can never be used or just can't be used in a case where it results in a person who defrauded the government paying no treble damage? So, Your Honor, it's an equitable question. We think the district court... Wait, why is that equitable? What did I just say? Why isn't that statutory? So, as I said, I think the sort of background equitable principle that's not found in the statute is a principle that... I thought you just said to me that the problem with Honeywell's position is that it would result in them not paying treble damage. I think the sort of specific problem with application of the Pro Tonto rule in this case is an equitable problem, which is that if Honeywell is not paying any statutory damages, that undermines... Well, one, it's inequitable with respect to the other defendants, but two, it undermines the punitive deterrent purposes of the False Claims Act. And as a matter of equity, I think the district court correctly determined that the application of the Pro Tonto rule in this case does not satisfy the relevant equitable principles. What case can you point to that suggests the False Claims Act, these liability questions, should be determined on equitable principles as opposed to, say, common law principles or a common law rule? So, I think the whole inquiry is a remedial equitable inquiry. And we cite a number of cases in our brief. We cite some cases from the False Claims Act context, not to address this particular question, but the gaps fill in other ways in sort of a common law equity-focused basis. Common law and equity are not the same thing, right? I mean, the fact that there's a gap and the gap may have to be filled by a judge-made rule is not the same thing as the inquiry being a case-by-case equitable type of inquiry. And those are distinct concepts. Yes, that's correct. However, I think when the court is developing a federal common law rule to apply, it's perfectly appropriate for the court in determining what rule is appropriate to fill the gap in any given context to take account of those equitable principles and to the extent that those equitable principles might be circumstance-dependent or might point in different directions in different cases. Can you point to any case in which there has been a decision a court had to make about setting a liability rule, which it has then preceded case-by-case, as opposed to picking one rule or another? So, there isn't a ton of case law that specifically conserves... Because we couldn't find, really, and I don't think any of the cases you cite, I mean, where the court has recognized there's a gap, it always picks a rule. So, historically, that has been correct, Your Honor. I mean, I think the one difference is in the CERCLA context, where Congress... And the statute there is distinct. Right. And most of these cases, right, the statute doesn't address it. Courts have historically picked one rule or the other, but the courts haven't really looked at the question whether they should pick one rule to apply in all cases or whether it would be better to proceed... But they do pick a rule, though. That's sort of our practice, is to pick a rule. That is reflected in the bulk of the case law, that's correct. And I think, as I said, CERCLA is sort of the one place that I know of where Congress has addressed the question. And there, Congress said, at least in certain circumstances, courts should proceed according to the principles of equity. So, I guess I have a question for the government, which is, if we were to pick a rule, which rule should we pick? We just... We don't think that's the appropriate question. If we think that that's what we need to do in this context, which rule would the government prefer? Because the government sometimes, you know, has argued for the pro-Tonto approach. So, if there's going to be one rule, which rule does the government prefer? So, the government hasn't taken a position on that question, Your Honor, and I think it's sort of helpful to take a step back to try to understand why. And I think, in this case, it is a particularly stark example of a context where the pro-Tonto rule really leads to an inequitable result and doesn't result in furthering the statutory scheme and the purposes of the False Claims Act. But there are other cases where the proportionate share approach in those cases might, very similarly, not further the appropriate purposes of the False Claims Act, might lead to under compensation. And there are still other cases where, you know, maybe both rules sort of further the purposes of the False Claims Act and the statutory scheme, similarly, but there are equity reasons or judicial economy reasons that one approaches the other. It's going to be a complete mess if there's no rule. I mean, how will settling parties have any idea how to proceed in terms of working with the government to settle if they don't know, when they settle, whether they'll have to play a proportionate share or whether their settlement will be final? I mean, how is it going to work when you have so many of these cases where there are many different tort pieces? As a general rule, settlement is always proceeding in the face of uncertainty. Legal uncertainty about what might happen at the trial, uncertainty about what a jury might end up doing if the case gets to trial. And I can see that there might be a little bit more uncertainty if the court adopts the government's approach than if the court adopts— A little more uncertainty? You think it'll just be a little bit? Yeah, Your Honor, I don't think it's that much more uncertainty. I mean, I think in a lot of cases, to the extent that a settlement generally reflects the proportionate share of a particular settling defendant's liability, then the two approaches sort of come out into a pretty similar result. And of course, I mean, I think Honeywell's approach, one input of that approach is what every other defendant settles for. And so at the outside of the case, each defendant has no idea what other defendants might settle for. And so I'm not sure that adopting that approach really reduces uncertainty on the front end. It might reduce uncertainty once you have a bunch of defendants who have settled and there's one defendant left. But that's a pretty rare circumstance where you have one lone holdout. What did the Supreme Court do in McDermott? Was that—pick your choice, pick your rule as you go? No, Your Honor, the Supreme Court in McDermott said that in the amorti context, the proportionate share rule wasn't—the court, though, I mean, didn't consider the question whether it should adopt one— It didn't consider that. It didn't occur to anybody. In fact, I've never heard a suggestion. I can't find any suggestion anywhere in the cases of the treatises that there's something other than a rule. So, Your Honor, we acknowledge that the cases have generally picked one rule or the other rule or a third rule or a fourth rule back in common law days. But that being said, I don't think there's any particular reason that the court should feel compelled to adopt a single rule. And as it's stepping back, the two rules— I mean, you're just saying the government wants the right to be opportunistic, right? It's not just the government. Well, it's the government in this case, of course, but why would this not spill over into other contexts, courts, and so on? So I think there's sort of two parts to that question, Your Honor. So taking the second part first, we think that the termination of what the court ought to do should be guided in large part by the statutory scheme and the purposes of the statute. And so I don't think if the court adopts this case-by-case approach that we've been advocating in this context that would necessarily spill over into other contexts or other statutory schemes. But that being said, I just don't think that it's entirely fair to characterize the government's approach as being the approach that seeks the most money in any given case. And I think, as we said in our briefs, there are also concerns of equity among defendants. There are concerns of judicial economy. How do they—it seems to me they're—even from your account, they are at war here, right? In other words, judicial economy would be set back with the uncertainty, et cetera. And having many trials about proportionality, and whereas on your account, fairness would be advanced. So I think it very much depends on the particular circumstances of any given case. And so— Well, this case I'm talking about. That's what you're talking about. So in this particular case, I mean, the district court, I think, considered the judicial economy question and found that in its experience, juries are perfectly capable of making these sorts of determinations. And I think a lot of the evidence that Honeywell points to about what other joint court users did in this case would likely be made anyway to provide context for the dispute, sort of inform the jury about what happened. How many defendants in this matter? So in this case, I believe Honeywell is the only defendant. I'm sorry, how many parties against which claims were made? I'm not sure the exact number, Your Honor. More than three? More than three, I would say. More than five? Perhaps more than five, although not all of the defendants are sort of directly linked to Honeywell. This is not your typical Med-Mel case, right? Two parties, maybe three at the most. So there are a relatively large number of potentially liable parties in this case, Your Honor, or this general fraud investigation. That being said, I mean, the district court looked at this particular question and just determined that given its experience litigating complex trials, this wasn't a particularly difficult problem to solve, and it didn't consider that to be a particularly strong reason to adopt the pro-tonto approach in this case. Does the government agree that the FCA is a joint and several liability statute? We have not tested that in this case, Your Honor. My sense of the case law is the same as my friends on the other sides, which is that courts have applied joint and several liability. I'll be honest. I'm not sure if the government has taken an official position on that question. I wouldn't want to take one without being authorized to do so, but that has been the rule that courts have applied. The FCA nowhere requires the determination of proportionate fault, does it? Not as part of the statutory scheme. So if we were to choose a rule, I mean, doesn't the pro-tonto approach seem more consistent with the FCA than the proportionate share? I don't think so, Your Honor. Do you think one of these approaches is more consistent with the statute? When you started, you said we should be focused on the statute. So does the statute suggest one approach is preferable or more consistent with one approach or another? But either approach may be more consistent with the statute in a particular case, and I think that just underscores why in one approach to apply in all cases, it isn't the appropriate way to go about it. And in this case, the proportionate share approach is more consistent with the statute. It furthers the statutory goals of deterrence and punishing. So is that just the purpose of the statute that you're referring to, or is it some particular provision of the statute? I think it's the statutory scheme, and in particular, the damages provision, which the Court is aware is a troubled damages provision. The Supreme Court has characterized that as reflecting Congress's understanding that part of the statute's purpose is to deter fraud against the government, to punish past fraud against the government. And those are goals of the statute that would not be advanced. I think it would be utterly undermined in a world where Honeywell is allowed to escape with no statutory damages whatsoever, simply because. Under your no-rule rule, I suppose a district judge could look at the, let's say, plethora of parties against some of the claimants and say, this is just too inefficient. We're not going to go through determining proportionality for 13 different companies. So we're going to use the pro tante rule. And another district judge could look at that and say, you know, I don't see a problem with that. I've had cases with 13 claimants, claimees, and yes. So I'll use the other rule. So I think it's correct, Your Honor, sort of as an initial matter that that sort of question to consider is one that we think is perfectly appropriate for district courts to consider in determining which rule to apply in any case. And it may be the case that different district judges or different district courts would balance the relevant considerations in different ways. But I think that's just a common feature of sort of equitable discretionary inquiries. I don't think there's anything specific about this inquiry that is particularly problematic in that respect. How much is the government seeking from Honeywell? So the underlying damages from Honeywell would be somewhere in the neighborhood of $34 million. Of how many? The government would. How many? I'm sorry. 34, you said? That's correct, Your Honor. Is that trebled or? Trebled. That's trebled. Okay. And then the government concedes that Honeywell is entitled to a credit for the proportionate share of other defense liability, which would reduce that $34 million by some amount. I don't know what the jury would say, but the proportionate share is. Wait, wait, wait. So the government agrees that the $34 million can be reduced. Correct, Your Honor. And is that the amount of reduction to be determined by the jury? Yes. Why didn't the district court mention a credit of $18 million or something? So I think the portion of the district court opinion that you're referring to, Your Honor, is where the district court said, if I were to adopt the pro-tonto approach, here are sort of. The government had an expert that said, this is how you would apply the pro-tonto approach. Honeywell had an expert that said, this is how you would apply the pro-tonto approach. And that was the government's expert applying the pro-tonto approach. All right. So if we agree with you, then we say, I'm not sure what the rationale would be yet, but we say, the pro-tonto approach is not appropriate in this case. Correct? And then we send it back to the district court. Correct. We say nothing else. So, right. I think all you need to say is the district court did not abuse its discretion in determining that the appropriate approach in this case is the proportionate share approach. I see. And what's your response to Mr. Primus' argument that under the government's theory, it's going to receive more than treble damages of its loss, treble its loss? So I think the argument, Your Honor, was squarely rejected as particularly persuasive by the Supreme Court and McDermott. Well, McDermott wasn't a false claims act case. That's correct. But I think it's actually more persuasive, or I guess that argument is less persuasive in this context. I mean, McDermott was not a treble damages case. So the punitive deterrent rationales of the statute or of the regime were even, I think, less evident. And there, the Supreme Court said there's no rigid rule against overcompensation. And sometimes it's more important to make a tortfeasor pay for the harm the tortfeasor has caused than to prevent over-recovery. I think that's even more true in this context where we're talking about a fraud on the government, on taxpayers. What do you do with the fact that the statute says treble damages of its losses, treble its losses? So the statute says, Your Honor, that each violator is liable for those treble damages. Number one, it doesn't say the government should not be permitted to recover more than treble damages in circumstances like this. Doesn't it say, it says any person who defrauds the government is liable to three times the damages caused by the, quote, act of that person. Act of that person, not all the government's losses, just that person's losses. Correct, Your Honor. So the $34 million, the treble $34 million, which is kind of the bottom line or top line number, it is only connected to the false claims that relate to Honeywell's alleged misrepresentations. So that's how we sort of focus in on Honeywell's misconduct in this case. And that sort of provides a starting point for any application of I-0. If anything else. Okay, thank you. Mr. Primus, you are out of town, out of time, excuse me, but you can take two minutes. Yeah. The position the government is taking here is really extraordinary. And they haven't taken a, quote, I haven't taken a position on which rules should apply. The government concedes Pro Tonto does apply. And I suspect in most cases, that's the rule they would want to apply. And so they're asking this court to really upset and create a lot of chaos in false claims act law to obtain a judgment against one party. And it will cause, it is not consistent with the statute and will cause great havoc. I also just want to be clear in response to Judge Ginsburg, the government is seeking 100% liability from Honeywell. So they've already recovered full amounts for the vests at issue. And they're going for 100% jury may or may not. What are the dollar amounts? Excuse me? What are the dollar amounts? What have they recovered? They've recovered for purposes of vests that contain Honeywell's product, $35 million or $36 million. And they hold us where they say we're liable for $34 and a half. So at the end, they'll have $70 million if they're successful. So you think we should then ignore the statutory requirement that any person who defrauds the government is liable to three times its damage. We're going to ignore that. Your Honor, I do want to address the textual argument too. The statute says, and I think Your Honor skipped the part about civil penalties. No, I didn't. I didn't. I know it says civil penalty, but so far the government isn't seeking civil penalties as far as I know. Maybe they will. But it says, it says, it says, it says civil penalties plus. Right? Correct. Okay. So what I wanted to respond to, Your Honor, was that under the plain language of this statute, Honeywell can be liable if it is found to have committed this false claim, liable to the United States government for a civil penalty of not less than $5,000 and not more than $10,000. And we have not disputed it. So that part of the statute can certainly still be enforced as written. But suppose the damages, just suppose the damages instead of being $34 million are, say we had the exact same case, except, except the damages were $100 million. Certainly a fine of $5,000 to $10,000 is going to compensate the government. It depends on the number of claims. Wait a minute. Okay. Let's, let's say there's just one or two, two parties. That's all, $100 million. And it says plus. What do you do about the word plus? Well, that's actually, you have the liability for the civil penalties, which still exists. And then for the three times the amount of damages portion, we say that that can be interpreted as written subject to the offsets that both parties agree exist in this case. I was just responding to your, I understand that's your argument. You seem to be suggesting that maybe the $5,000 to $10,000 civil penalty is somehow compensatory to the government. No, the point there is just textually, the statute still has financial exposure for a defendant who is liable, even with the offset approach to the three times damages. Okay. And in addition, that is the penalty. It's a civil penalty. That is the punitive portion. Isn't the question, what does it mean to be liable? I mean, the statute doesn't say that a person will pay three times trouble damages. They're liable for trouble damages. And being liable doesn't always mean that. Your Honor, that was the point I was trying to make, which is that Honeywell, under the reading that we're proposing, can still be held liable for a false claim, still be subject to the civil penalties, still potentially be subject to the three times the damages, unless they're offset by other people who have already paid. That is a collateral consequence to being a liable under the False Claims Act and forbidden for a while or things like that. Yes, Your Honor, if we're talking in the world of purpose, again, which we don't advocate, but certainly there are other consequences to Honeywell if it is found liable. There's the penalty provision. There are reporting obligations and federal government contracting. There are discretionary determinations that can be made by government agencies with a party that's found liable for a false claim. So it's a serious business, even with the offset. There is potential debarment, although I want to say for the record that I don't believe that would be appropriate in this case. But yes, those are all serious risks that any False Claims Act defendant faces, regardless of whether they pay three times damages or not. All right. Anything else? Okay, thank you. The case is submitted.
judges: Tatel, Rao, Ginsburg